# In the United States Court of Federal Claims

Pro Se
(Filed: January 7, 2019)

| | |
|---|---|
| CURTIS W. PHILBERT, ) | Keywords: 28 U.S.C. § 1500; Equal Pay |
| ) | Act; Title VII; United States v. Tohono |
| Plaintiff, ) | O'Odham Nation |
| ) | |
| v. ) | |
| ) | No. 18-920C |
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

*Curtis W. Philbert*, San Bernardino, CA, pro se.

*Kristin B. McGrory*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, with whom were *Steven J. Gillingham*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Joseph H. Hunt*, Acting Assistant Attorney General, for Defendant.

## OPINION AND ORDER

**KAPLAN, J.**

Plaintiff Curtis Philbert brings this action under the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d). He alleges that the Department of Veterans Affairs ("VA") Loma Linda Medical Center discriminated against him based on his sex when it paid female health technicians—who were allegedly performing the same work as he—at a GS-7 salary level, while paying him at only the lower GS-6 level. Mr. Philbert initially filed his EPA claim, along with several other anti-discrimination claims, in the United States District Court for the Central District of California. The district court transferred the EPA claim to this court after determining it lacked jurisdiction because the relief sought for the EPA claim was greater than $10,000. See 28 U.S.C. § 1346(a)(2).

Presently before the Court is the government's motion to dismiss for lack of subject-matter jurisdiction based on 28 U.S.C. § 1500. For the reasons set forth below, the government's motion to dismiss is **GRANTED**.

# BACKGROUND[1]

### I. The Alleged Discrimination

Plaintiff Curtis Philbert has been an employee of the VA Loma Linda Medical Center since October 2005. 2d Am. Compl. ("District Court Compl.") ¶ 3, Docket No. 4-5. As of October 2007, he held the position of health technician at the GS-6 level. See id. ¶ 13.

On October 2, 2007, Mr. Philbert filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that he had been a victim of employment discrimination. See id. ¶ 9; see also Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") at 3, Docket No. 12. Mr. Philbert does not detail the claims underlying his EEOC complaint but notes that the EEOC issued a decision adverse to the VA in May 2009, which he asserts "directed the Defendant's Agency to pay a fine, in addition to conduct[ing] EEO training for Responsible Management Officials ("RMOs") regarding Title VII of the Civil Rights Act." District Court Compl. ¶¶ 9–10.

According to Mr. Philbert, sometime "during the processing of" his EEOC complaint, between October 2007 and October 2012, management "[u]pdated all of the remaining GS-6 Health Technicians position description[s] in the Department except [his]." Id. ¶ 12–13. Additionally, he alleges that in early 2008, management "submitted a list of all of the remaining GS-6 Health Technicians in the department for promotions to [] GS-7." Id. ¶ 28. Mr. Philbert's name was not included on the list. Id.

Mr. Philbert asserts that around June 2011 he discovered that he had been "working under an outdated position description dated 1992, while all of [his] comparators work[ed] under updated [position descriptions]." Id. ¶ 27d (emphasis omitted). According to Mr. Philbert, when he raised the discrepancy with his manager, his position description was altered to make it seem as though he exercised less independence in performing his duties and, therefore, merited compensation at the GS-6 rather than GS-7 level. Id. ¶ 27g.

It appears that Mr. Philbert first learned that he was the only health technician not classified at the GS-7 level at a meeting on October 22, 2012 attended by himself, the agency human resources manager and the agency representative. Id. ¶¶ 11–12. Mr. Philbert's position description was eventually updated in December 2012. Id. ¶ 13. Mr. Philbert argues that "[t]he sole reason the Defendant's [managers] denied me a promotion to GS-7, position level, was to penalize me for my lawful, protected conduct in asserting rights to employment free from discrimination." Id. ¶ 15. Further, he alleges that despite being paid at the GS-6 level, he was performing duties comparable to his colleagues who were paid at the GS-7 level. Id. ¶ 27b.

---

[1] The facts set forth in this section are based on the allegations in Mr. Philbert's complaint, which the Court assumes are true for purposes of deciding the government's motion to dismiss, as well as on jurisdictional facts drawn from any additional documents submitted by the parties.

Received - USCFC
JAN - 7 2019

## II.     Proceedings in the United States District Court for the Central District of California

On May 12, 2017, Mr. Philbert filed a pro se complaint in the United States District Court for the Central District of California alleging disparate treatment on the basis of sex and the creation of a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., along with a claim for wage discrimination under the EPA, 29 U.S.C. § 206(d). See Compl., Philbert v. Shulkin, No. 5:17-cv-00929 (C.D. Cal. May 12, 2017); App. to Def.'s Mot. to Dismiss ("Def.'s App.") at 30, Docket No. 11. On September 19, 2017, Mr. Philbert filed an amended complaint asserting additional claims under Title VII for disparate treatment on the basis of national origin, hostile work environment, retaliation based on his prior EEO activity, and a claim for age discrimination in violation of the Age Discrimination Act in Employment Act, 29 U.S.C. §§ 621 et seq. Def.'s App. at 48; see also Philbert v. Shulkin, No. 5:17-cv-00929, 2017 WL 5185310, at *1 (C.D. Cal. Nov. 6, 2017) (summarizing procedural history).

The government moved to dismiss the first amended complaint on October 3, 2017. Mot. to Dismiss, Philbert v. Shulkin, No. 5:17-cv-00929 (C.D. Cal. Oct. 3, 2017). The district court, Judge Christina A. Snyder, subsequently dismissed Mr. Philbert's age discrimination claim with prejudice and his retaliation and hostile work environment claims without prejudice on November 6, 2017. Def.'s App. at 48; see also Philbert, 2017 WL 5185310, at *8.

On November 20, 2017, Mr. Philbert filed a second amended complaint asserting five claims: 1) disparate treatment based on his national origin in violation of Title VII; 2) the creation of a hostile work environment in violation of Title VII; 3) retaliation for the filing of an EEO complaint in violation of Title VII; 4) disparate treatment on the basis of sex in violation of Title VII; and 5) wage discrimination in violation of the Equal Pay Act. Id. at 1–29.

On December 13, 2017, Mr. Philbert filed a motion to transfer his EPA claim to the Court of Federal Claims pursuant to 28 U.S.C. § 1631. Id. at 49. Shortly thereafter, on December 18, 2017, the government filed a motion to dismiss Mr. Philbert's hostile work environment claim for failure to state a claim and the equal pay claim on statute-of-limitations grounds to the extent Mr. Philbert sought to recover unpaid wages prior to May 12, 2015. Id. at 52, 54. Two days later, the government filed an opposition to Mr. Philbert's motion to transfer. Id. at 57–64.

Judge Snyder initially denied the motion to transfer the EPA claim because it was not clear that the claim exceeded $10,000, which would have deprived the district court of concurrent jurisdiction under the Tucker Act. Id. at 51. Mr. Philbert filed a motion for reconsideration. With it, he submitted a computation based on the back-pay calculator on the Office of Personnel Management's website, which he said established that he would be entitled to an award of backpay of $11,662.79 for his EPA claim. Id. at 45.

Based on the new information, Judge Snyder ordered the EPA claim transferred to the Court of Federal Claims on April 20, 2018. Id. at 47. At the time the EPA claim was transferred to the Court of Federal Claims—and to date—Mr. Philbert's Title VII sex discrimination claim and several other claims have remained on the district court's docket.

3

### III. The Present Dispute

Mr. Philbert filed his transfer complaint in this court on July 30, 2018. Docket No. 6. In it, he alleges wage discrimination in violation of the EPA. Transfer Compl. at 2. Specifically, he alleges that since early 2008, the VA has paid him at a lesser rate than his female comparators for a job requiring "equal skill, effort, and responsibility and which [is] performed under similar working conditions." Id. at 3.

The government filed a motion to dismiss on October 31, 2018, in which it argues that 28 U.S.C. § 1500 deprives the Court of subject-matter jurisdiction over Mr. Philbert's EPA claim. Def.'s Mot. to Dismiss ("Def.'s Mot.") at 1, Docket No. 11. In the alternative, the government requests that the Court dismiss the complaint to the extent Mr. Philbert makes claims for unpaid wages that accrued prior to May 12, 2015. Id. It contends that recovery for wages prior to May 12, 2015 is impermissible under the EPA's two-year statute of limitations and that Mr. Philbert has not adequately alleged a willful violation of that statute. Id. at 10.

## DISCUSSION

### I. Standard of Review

In determining jurisdiction, the court accepts as true all undisputed facts in the pleadings and draws all reasonable inferences in favor of the plaintiff. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The Court may, however, "inquire into jurisdictional facts" to determine whether it has jurisdiction. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). It is well established that complaints filed by pro se plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Nonetheless, even pro se plaintiffs must persuade the Court that jurisdictional requirements have been met. Harris v. United States, 113 Fed. Cl. 290, 292 (2013).

The Court of Federal Claims has jurisdiction under the Tucker Act to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). The Tucker Act waives the sovereign immunity of the United States to allow a suit for money damages, United States v. Mitchell, 463 U.S. 206, 212 (1983), but it does not confer any substantive rights, United States v. Testan, 424 U.S. 392, 398 (1976). Therefore, a plaintiff seeking to invoke the court's Tucker Act jurisdiction must identify an independent source of a substantive right to money damages from the United States arising out of a contract, statute, regulation or constitutional provision. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008). "The Equal Pay Act is such a statute." Alverson v. United States, 88 Fed. Cl. 331, 333 (2009).

The Court's exercise of its Tucker Act jurisdiction, however, is subject to 28 U.S.C. § 1500. That statute provides that the United States Court of Federal Claims:

> shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States

or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

Two inquiries are required to determine whether § 1500 applies: "(1) whether there is an earlier-filed suit or process pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are for or in respect to the same claim(s) asserted in the later-filed Court of Federal Claims action." Brandt v. United States, 710 F.3d 1369, 1374 (Fed. Cir. 2013) (quotations omitted). With respect to the second inquiry, the Supreme Court has held that "[t]wo suits are for or in respect to the same claim, precluding jurisdiction in the [Court of Federal Claims], if they are based on substantially the same operative facts, regardless of the relief sought in each suit." United States v. Tohono O'Odham Nation, 563 U.S. 307, 317 (2011). "[I]t is irrelevant whether the relief sought in the two co-pending suits is the same or different (e.g., injunction versus money damages). All that matters is that the two suits be based on 'substantially the same operative facts.'" Ministerio Roca Solida v. United States, 778 F.3d 1351, 1354 (Fed. Cir. 2015) (citations omitted) (quoting Tohono, 563 U.S. at 317).

## II. The District Court Claim Was Pending When the Equal Pay Claim Was Filed

As noted, to assess whether § 1500 bars this suit, the Court must first determine whether there was an earlier-filed suit or process pending in another court at the time this case was filed. In this case, that requirement has been met.

Pursuant to 28 U.S.C. § 1631, a claim that is transferred "shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it was transferred." The court of appeals has held that this provision means that "the court receiving a transferred claim must treat the claim as if it were filed at the same moment the claim was filed originally in the first court." Griffin v. United States, 590 F.3d 1291, 1293 (Fed. Cir. 2009) (citing United States v. Cty. of Cook, 170 F.3d 1084, 1090 (Fed. Cir. 1999)).

The Federal Circuit has also held that if claims are filed simultaneously in both the district court and the Court of Federal Claims, then the claim filed in the district court will be treated as "pending" for purposes of § 1500. Id. at 1293. "Therefore, if a plaintiff files multiple related claims in district court, and the court transfers one of those claims to the Court of Federal Claims, the original claims are 'pending' at the time the transferred claim is considered filed," which means that "§ 1500 may deprive the Court of Federal Claims of jurisdiction over the transferred claim." Id. Accordingly, the Court finds that—for purposes of 28 U.S.C. § 1500—the district court claims under Title VII and other anti-discrimination provisions were pending when the EPA claim was filed here.

## III. Both Claims Present the Same Operative Facts

The government argues that "[b]oth of Mr. Philbert's Title VII claims and his EPA claim arise from the [VA]'s alleged intentional failure to update his position description and by paying him less compensation than it paid to female coworkers performing the same or similar work."

5

Def.'s Mot. at 9. As such—according to the governemnt—they arise from the same operative facts. Id. The Court agrees.

Two claims share the same operative facts when—notwithstanding that they are based on different legal theories—both are based on the same conduct that occurred during the same time period. Compare Harbuck v. United States, 378 F.3d 1324, 1329 (Fed. Cir. 2004) (reasoning that the two legal theories presented by an EPA and Title VII claim were merely "different manifestations of the same underlying claim that the Air Force discriminated against women by paying them less than men"), and Beberman v. United States, 129 Fed. Cl. 539, 547–48 (2016) (dismissing claim pursuant to § 1500 where the claim in the Court of Federal Claims and the claim in the U.S. Court of Appeals for the Third Circuit required both courts to consider the same evidence), with Cooke v. United States, 77 Fed. Cl. 173, 177 (2007) (finding that FLSA and EPA claims did not share the same operative facts where the "FLSA claim involve[d] later and different conduct than [the] EPA claim").

In Griffin, a case that is procedurally indistinct from this one, the Federal Circuit affirmed the Court of Federal Claims's dismissal of an EPA claim because it shared the same operative facts as a Title VII gender discrimination claim pending in federal district court. 590 F.3d at 1295. The plaintiff in Griffin alleged in both courts that her employer, the U.S. Army, discriminated against her by "failing to classify properly her current position; failing to select her for various positions when she was the better qualified candidate; and retaliating against her after she pressed her claims of discrimination." Griffin v. United States, 85 Fed. Cl. 179, 182 (2008). The Court of Federal Claims and the Federal Circuit determined that these claims arose from the same operative facts because "the pleaded facts [in both complaints were] mirrored" and because the plaintiff's "injury for both claims stem[med] from the same single event: the Army's promotion of a male candidate in her place." Griffin, 590 F.3d at 1294. The fact that "Title VII requires proof of intentional discrimination, while the EPA does not," the court of appeals held, meant only that the plaintiff sought relief under two different legal theories—this did not change the conclusion that the operative facts were "identical." Id. at 1293.

Here, as in Griffin, the Title VII claims Mr. Philbert filed in the district court and the EPA claim in this court share the same operative facts. Both his Title VII and EPA claims allege the same injury and are based on the same conduct during the same time period: in early 2008, Mr. Philbert's employer promoted all GS-6 health technicians to GS-7 except him. Indeed, the allegations in both complaints are nearly identical. See District Court Compl. ¶ 31 ("I alleged on the basis of sex (male) that I am being paid less at a GS-6 level in the wages paid for [] equal work on jobs the performance of which requires equal skill, effort and responsibility."); Transfer Compl. at 3 ("I alleged on the basis of sex (male) that I am being paid less rate at a GS-6 level in the wages paid for [] equal work on jobs the performance of which requires equal skill, effort, and responsibility."). Mr. Philbert even acknowledges their similarity: "[A]s a result of my Equal Pay Act Claim[,] I may also have a claim under Title VII." District Court Compl. ¶ 31.

Mr. Philbert attempts to distinguish the two claims on the grounds that one (the EPA claim) is a strict liability offense, whereas the other (Title VII) requires specific intent. But "section 1500 has no reference to the legal theory upon which a claimant seeks to enforce his demand." Johns-Manville Corp. v. United States, 855 F.2d 1556, 1564 (Fed. Cir. 1988) (internal quotations and citations omitted). Furthermore, "[c]laims are the same where they arise from the same operative

6

facts even if the operative facts support different legal theories which cannot all be brought in one court." Harbuck, 378 F.3d at 1329 (quoting id. at 1567); see also Griffin, 590 F.3d at 1293. It is similarly irrelevant if the two claims would entitle Mr. Philbert to different relief. See Pl.'s Opp'n at 13 (citing Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1551 n.17 (Fed. Cir. 1994)). Thus, "Loveladies' holding that § 1500 does not preclude Claims Court jurisdiction so long as 'the pending action in another court seeks distinctly different relief,' was effectively overruled by Tohono." Ministerio Roco Solida, 778 F.3d at 1355–56 (internal citations omitted).

In short, this Court lacks jurisdiction over Mr. Philbert's EPA claim pursuant to § 1500. It therefore has no choice but to dismiss his complaint.[2]

## CONCLUSION

On the basis of the foregoing, the government's motion to dismiss is **GRANTED**. Mr. Philbert's complaint, accordingly, is **DISMISSED without prejudice** and his motion for reconsideration (Docket No. 17) is **DENIED** as moot. The Clerk is directed to enter judgment accordingly. Each side shall bear its own costs.

**IT IS SO ORDERED.**

ELAINE D. KAPLAN
Judge

---

[2] In light of its conclusion that § 1500 bars the Court from exercising jurisdiction over Mr. Philbert's EPA claim, the Court need not address the statute-of-limitations arguments raised by the government.